UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

| | |
|---|---|
| RAMGEN POWER SYSTEMS LLC, | CASE NO. C12-1762 MJP |
| Plaintiff, | ORDER DENYING MOTION FOR SUMMARY JUDGMENT AND SANCTIONS |
| v. | |
| AGILIS ENGINEERING INC, | |
| Defendant. | |

This motion is before the Court on Defendant's motion for summary judgment and sanctions. (Dkt. No. 61.) The Court considered the motion, all responsive briefing, and all related documents. The motion for summary judgment and sanctions is DENIED.

**Background**

Plaintiff Ramgen Power Systems, LLC ("Ramgen") is suing Defendant Agilis Engineering, Inc. ("Agilis") for breach of contract, violations of the Uniform Commercial Code ("UCC"), breach of warranty, and professional negligence. (Dkt. No. 19 at 12-13.) Ramgen develops supersonic shockwave compressors and gas turbine power generation systems and is under contract with the United States Department of Energy to develop a supersonic shockwave-

based carbon dioxide compressor and gas turbine power generation system. (Id. at 4.) Ramgen contracted with Agilis to design, manufacture, test, deliver, install, and calibrate a supersonic, shockwave based, low-pressure carbon dioxide compressor rig ("the Rig"). (Id. at 1.)

Ramgen alleges, despite warranting its services would be performed and the Rig would be delivered in conformity with the highest standards of quality and professionalism in the engineering and design industry, Agilis failed to properly perform its duties required by the contract and was negligent in designing the Rig. (Id. at 2.) On May 10, 2012, during the first full-speed operational test with the Rig, Ramgen alleges the Rig suffered a catastrophic failure that left it inoperable. (Dkt. No. 19 at 9.)

Agilis asks the Court to enter summary judgment in its favor on all claims and strike all of Ramgen's pleadings, or alternatively, for the Court to award evidentiary sanctions for spoliation against Ramgen. (Dkt. No. 61 at 1.) Agilis contends the superseding and proximate cause of the Rig's failure was Ramgen continuing to operate the Rig after it made noises during a test run, causing the "rub event" which damaged the Rig. (Id. at 17.) Agilis further asserts Ramgen failed to mitigate damages by continuing to run the Rig after it heard noises. (Id. at 19.) Finally, Agilis asserts Ramgen spoliated evidence by detaching the Rig's nosecone after the rub event, "making it impossible for Agilis to determine what damage the nosecone suffered and to derive further evidence as to the cause of the damage to the Rig." (Id. at 22.)

Ramgen contends it properly operated the Rig, asserting noises heard during the test run were due to an unrelated "surge event" which the Rig was designed to withstand and which did not impact or cause the rub event. (Dkt. No. 70 at 13.) Instead, Ramgen alleges the catastrophic rub event was caused by a faulty design by Agilis which left the Rig "fundamentally defective and destined to fail." (Id. at 14.) Ramgen claims it had no way of knowing of the defect before

ORDER DENYING MOTION FOR SUMMARY
JUDGMENT AND SANCTIONS- 2

running the Rig because it was given an inaccurate diagram (the "Campbell diagram") by Agilis. (Dkt. No. 72 at 5.) Ramgen contends it did not spoliate evidence or prevent Agilis from inspecting the Rig by removing the nosecone, but instead offered Agilis representatives the opportunity to see the Rig before disassembling it, and when they declined the travel, Ramgen arranged for Agilis to participate via video conference. (Dkt. No. 72 at 6.) Ramgen further notes it sent, at Agilis's request, the seal of the nosecone to Agilis and maintains the nosecone at its facility. (Id. at 7.)

Ramgen further notes Agilis's motion for summary judgment is based entirely on the declaration of Paul Gardner, which it asserts should be stricken for lack of personal knowledge. (Dkt. No. 70 at 17.) Ramgen also contends the Gardner declaration is replete with "incomprehensible assertions, unsupported allegations, and bald conclusions." (Id. at 21.) It notes Gardner is Agilis's corporate representative and its Rule 30(b)(6) declarant. (Id. at 18.) Agilis responds arguing Gardner is an expert, and as such may rely on information provided to him in providing expert testimony. (Dkt. No. 74 at 7.) Agilis goes on to argue the opinion of Dr. Shen, which Ramgen relies on, should be stricken because it is "solely based on his alleged experience." (Id. at 10.)

## Analysis

I.   Summary Judgment Standard

Summary judgment is warranted if no material issue of fact exists for trial. Warren v. City of Carlsbad, 58 F.3d 439, 441 (9th Cir. 1995), cert. denied, 516 U.S. 1171 (1996). The underlying facts are viewed in the light most favorable to the party opposing the motion. Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 587 (1986). "Summary judgment will not lie if . . . the evidence is such that a reasonable jury could return a verdict for

1  the nonmoving party." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986). The party

2  moving for summary judgment has the burden to show initially the absence of a genuine issue

3  concerning any material fact. Adickes v. S.H. Kress & Co., 398 U.S. 144, 159 (1970). If the

4  moving party makes this showing, the burden shifts to the nonmoving party to establish the

5  existence of an issue of fact regarding an element essential to that party's case, and on which that

6  party will bear the burden of proof at trial. Celotex Corp. v. Catrett, 477 U.S. 317, 323-24

7  (1986). To discharge this burden, the nonmoving party cannot rely on its pleadings, but instead

8  must have evidence showing that there is a genuine issue for trial. Id. at 324.

9

10         II.     Declaration of Paul Gardner

11         Agilis contends the Declaration of Paul Gardner is expert testimony, and as such, is

12  properly predicated on facts of which he has no personal knowledge. (Dkt. No. 74 at 7.) "At

13  summary judgment, an expert declaration must meet two tests: (1) the opinion expressed must be

14  admissible under Federal Rules of Evidence 702 and 703, and (2) the declaration must contain

15  'facts that would be admissible in evidence' and 'show that the affiant or declarant is competent

16  to testify on the matters stated.'" Lopez v. Contra Costa Reg'l Med. Ctr., 2014 U.S. Dist. LEXIS

17  27663, *24 (N.D. Cal. Feb. 28, 2014), Fed. R. Civ. P. 56(c)(4). Agilis is correct that under

18  Federal Rule of Evidence 703, an expert witness "is permitted wide latitude to offer opinions,

19  including those that are not based on firsthand knowledge or observation." Daubert v. Merrell

20  Dow Pharms., 509 U.S. 579, 592 (1993). However, "to the extent that [an expert's] report

21  simply recites facts that constitute inadmissible hearsay, those sections of the report are barred."

22  McDevitt v. Guenther, 522 F.Supp. 2d 1272, 1294 (D. Haw. 2007). The statements of fact in

23  Gardner's declaration are admittedly made without personal knowledge, and are supported only

24  by exhibits which are largely unexplained and unintelligible graphs and technical documents.

Without deciding whether Gardner is a properly qualified expert, the Court finds the statements of fact in Gardner's declaration, which constitute nearly the entire declaration, are inadmissible as hearsay and under Fed. R. Evid. 703. Id. The Court STRIKES the Gardner declaration for consideration on summary judgment.

III.     Deposition of Dr. Steven Shen

Agilis asserts the Court should disregard the expert report of Dr. Steven Shen because his testimony does not meet the Daubert requirements for expert testimony. (Dkt. No. 74 at 10.) The only argument provided is that Dr. Shen "did not do any experiments" with the Rig in this case. (Id.) However, as Agilis correctly noted in defending its use of the Gardner deposition, an expert need not testify from personal knowledge. Daubert, 509 U.S. at 592. The Court declines to disregard Dr. Shen's report and deposition testimony on the grounds he did not do any personal testing of the Rig.

IV.     Superseding Cause and Mitigation of Damages

To succeed in a contract claim, a plaintiff must prove a valid contract existed between the parties, the contract was breached, and the breach resulted in damage. Lehrer v. DSHS, 101 Wn. App. 509, 516 (2000). Agilis contends Ramgen's continued operation of the Rig was the superseding cause of the damage to the Rig and constituted a failure to mitigate damages. (Dkt. No.17-19.)  Ramgen argues the affirmative defense of superseding cause does not apply to contract claims and cites  a decision by this Court which states the comparative negligence/comparative fault doctrine does not apply to contract claims.  Richter v. City of Des Moines, 2012 U.S. Dist. LEXIS 46494, *5-6 (W.D. Wash. Apr. 2, 2012). Ramgen contends the failure to mitigate affirmative defense only raises questions of fact, making summary judgment inappropriate. (Dkt. No. 70 at 30.)

1       Agilis's argument cannot support summary judgment for several reasons. First, Agilis's

2 superseding cause argument is off point because it appears to assert that it is irrelevant whether

3 or not Agilis breached the contract if Ramgen exacerbated the harm to the Rig by continuing to

4 operate it when there were signs of malfunction. Ramgen is correct this affirmative defense is not

5 applicable to the contract claims. Richter, 2012 U.S. Dist. LEXIS 46494 at *5. Agilis's citation

6 to a case in admiralty is inapposite. Exxon Co. v. Sofec, 517 U.S. 830, 838 (1996). While it is

7 true damages are generally not recoverable in contract unless the party in breach had reason to

8 foresee such damages a s a probable result of breach, the issue in dispute is not whether or not

9 the damage from the Rig's failure was foreseeable; the issue is why the Rig failed. Brotherson v.

10 Prof'l Basketball Club, L.L.C., 604 F.Supp.2d 1276, 1292 (W.D. Wash. 2009).

11       Second, whether or not Ramgen failed to mitigate damages goes to the amount

12 potentially recoverable, not the cause of the Rig's failure, which is the central issue in this case.

13 The duty to mitigate "prevents recovery for those damages the injured party could have avoided

14 by reasonable efforts taken after the wrong was committed." Bernsen v. Big Bend Elec. Coop.,

15 Inc., 68 Wn. App. 427, 433 (1993). Failure to mitigate may be relevant to the amount Ramgen

16 can recover if it prevails on its claims, but it does not support summary judgment here because

17 there are issues of fact as to the actual cause of the Rig's failure. Agilis fails to meet its burden of

18 proof as to the affirmative defense of mitigation of damages. Federal Signal Corp v. Safety

19 Factors, 125 Wn.2d 413, 434 (1994).

20       Third, Agilis's argument itself acknowledges there are numerous central issues of

21 material fact in dispute. Agilis states in its briefing, "The precise cause of the incident is at issue.

22 Each party offers a different explanation as to the dynamics involved. The central question

23 involves a determination as to how the Rig suffered damage." (Dkt. No. 61 at 21.) In fact,

24

ORDER DENYING MOTION FOR SUMMARY
JUDGMENT AND SANCTIONS- 6

Ramgen produces several exhibits presenting an explanation of the Rig's failure in contrast to the explanation offered by Agilis. For example, Ramgen Engineer Paul Brown submitted a declaration stating he personally relied on Agilis's design of the Rig as depicted in the Campbell diagram, which was supposed to accurately represent the Rig's design. (Dkt. No. 72 at 2.) Brown states upon examining the Rig he discovered Agilis made a number of "fundamental errors" in the Campbell diagram. (Id. at 3.) Brown asserts he was present and lead the test team during the Rig's operation, and the Rig was operated "properly, prudently, and in accordance with [his] experience in the industry." (Id. at 6.)

There are numerous issues of material fact making summary judgment inappropriate on all claims. Arguments related to failure mitigate damages and superseding cause do not address whether or not Agilis breached the contract for the Rig. The Court DENIES summary judgment.

V.    Spoliation

"A federal trial court has the inherent discretionary power to make appropriate evidentiary rulings in response to the destruction or spoliation of relevant evidence." Glover v. BIC Corp., 6 F.3d 1318, 1328 (9th Cir. 1993). Here, there is no clear evidence of spoliation, and the Court declines to issue sanctions of any kind. Agilis contends Ramgen "violently removed the nosecone from the Rig, causing damage to the nosecone and permanently impairing Agilis's ability to investigate the rub event." (Dkt. No. 61 at 22.) In sharp contrast to this characterization, Paul Brown from Ramgen states in his declaration Ramgen "invited Agilis to come to Ramgen's Redmond facility and participate in the investigation and disassembly, but they declined. Instead, [Agilis] provided guidance, and . . . [Ramgen] suggested and arranged for Agilis to participate by video-conference." (Dkt. No. 72 at 6.) Brown contends Agilis's guidance was followed in disassembly, and some parts were sent to Agilis while the nosecone remains at Ramgen, intact

ORDER DENYING MOTION FOR SUMMARY
JUDGMENT AND SANCTIONS- 7

1  and available for Agilis's investigation. (Id. at 6-7.) There are considerable issues of fact
2  regarding the disassembly of the Rig, and the Court declines to issue discovery sanctions.

### Conclusion

Numerous issues of material fact make summary judgment inappropriate. Issues of fact regarding the preservation of evidence make sanctions inappropriate. Defendant's motion for summary judgment and sanctions is DENIED in its entirety.

The clerk is ordered to provide copies of this order to all counsel.

Dated this 20th day of August, 2014.

Marsha J. Pechman
United States District Judge